IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY MELVIN, \*

   Plaintiff, \*

v.    \*    Civil Action No. GLR-19-1284

FREDERICK T. ABELLO, et al., \*

   Defendants. \*

\*\*\*

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Frederick T. Abello and Major Nurudeen Matti's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 23). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6. (D.Md. 2018). For the reasons outlined below, the Court will grant Defendants' Motion.

### I.    BACKGROUND[1]

Plaintiff Anthony Melvin is a state prison inmate presently housed at Western Correctional Institution in Cumberland, Maryland. (Notice of Change of Address, ECF No. 52). In an unverified Complaint, Melvin alleges that on January 8, 2018, while housed as a pre-trial detainee at the Baltimore City Booking and Intake Center ("BCBIC"), BCBIC Warden Frederick Abello and correctional officer Nurudeen Matti "started a conspiracy to

---

[1] Unless otherwise noted, the Court takes the following facts from Melvin's Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

have [him] killed." (Compl. at 1, ECF No. 1).[2] Melvin asserts that BCBIC staff kept him locked in a cell for twenty-four hours, spit on his food, allowed only two showers per week, and denied him phone and mail privileges. (Id. at 2). He also alleges that Abello came to his cell four times threatening to hurt him and, after his transfer from BCBIC, Abello directed correctional staff at different prisons to tell other inmates that Melvin is a "snitch," in an attempt to "put [his] life in harm's way." (Id. at 1).

Upon preliminary review of the Complaint, the Court was unable to evaluate the sufficiency of Melvin's claim based on the facts alleged and directed Melvin to supplement his Complaint. (May 2, 2019 Order, ECF No. 2). The Order instructed Melvin to identify the individuals whom he claimed were responsible for the alleged wrongdoing; the federal law or constitutional provision violated; the dates of any relevant incidents; and any additional facts supporting his allegations. (Id. at 1).

Melvin filed two Supplements (ECF Nos. 3, 4), five letters (ECF Nos. 8, 10, 14, 16, 19), and three change of address notifications (ECF Nos. 17, 18, 22) further supplementing his original claim. Melvin repeated the allegations mentioned in his Complaint but failed to provide any additional details against Defendants. Melvin also noted that he had been transferred to the Maryland Reception, Diagnostics & Classification Center ("MRDCC") in Baltimore, Maryland on May 25, 2018; to the Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland on July 22, 2018; to the Maryland Correctional

---

[2] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

Institution-Hagerstown ("MCI-H") on December 28, 2018; to the Eastern Pre-Release Unit ("EPRU") in Church Hill, Maryland on February 11, 2019; to Dorsey Run Correctional Facility in Jessup, Maryland on July 8, 2019; and to Brockbridge Correctional Facility ("BCF") in Jessup, Maryland later in July 2019. (See Correspondence at 5, ECF No. 8; Correspondence at 4, ECF No. 40; Change of Address, ECF Nos. 17, 18.) He further alleges that Defendants instructed correctional staff at these prisons to tell other inmates that he was a "snitch," that prison staff began tampering with his mail, and that BCF officers held him in a cell for twenty-three hours per day. (See Correspondence, ECF Nos. 8, 10, 19). Melvin repeats his allegation that Abello threatened to hurt him while he was housed at BCBIC but does not provide any additional information. (Correspondence, ECF No. 8).

In an August 23, 2019 correspondence, which the Court construes as an Opposition to the Motion, Melvin further alleges that while he was at BCBIC on January 8, 2018, he was involved in an altercation with another inmate who told him that Samson Osifo, a BCBIC correctional officer, called Melvin "a rat." (Correspondence ["Pl.'s Opp'n"] at 1, ECF No. 26). Thereafter, Matti allegedly came to Melvin's cell and stated, "[W]e going to kill you." (Id.). Fearing for his life, Melvin staged a suicide attempt and was sent to the Inmate Mental Health Unit ("IMHU"), where Abello visited on May 4, 2018, May 11, 2018, May 16, 2018, and May 21, 2018, and threatened him. (Id. at 2; see also Correspondence ["List of Threats and Witnesses"] at 2, ECF No. 28). Melvin was then transferred to MRDCC, where he sought protective custody because of the alleged threats at BCBIC. (Pl.'s Opp'n at 3). Melvin asserts that when he heard a correctional officer at MRDCC call him a "snitch," Melvin "knew the conspiracy follow[ed him] there." (Id. at

3

4). Melvin alleges that he continued to be labeled a snitch as he moved to different facilities, and he filed Administrative Remedy Procedure ("ARP") complaints to report the alleged conspiracy. (Id. at 4–6, 10). He explains that he did not file an ARP at BCBIC, because he did not have any paper in the mental health unit but notes that he filed ARPs immediately after he was transferred. (Correspondence ["Statement of Facts re ARPs"] at 1, ECF No. 27; see also Correspondence ["ARP Documents"] at 5–6, 11–13, 25–33, 40–41, 49–51, ECF No. 32).[3] Melvin also sent letters to several local, state, and national officials regarding the matter. (Pl.'s Opp'n at 4–6).

Melvin was subsequently transferred to Roxbury Correctional Institution ("RCI") and continued to send correspondence to the Court. (ECF Nos. 28, 30, 32–44). In some of the letters, Melvin lists the names of several correctional officers from different institutions; however, it is unclear whether he intends to add them as Defendants or merely include them as witnesses. (See, e.g., Statement of Facts re ARPs at 2). Melvin asserts that he was held in protective custody at RCI, where he was locked in a cell for twenty-four hours with no access to the library, phone, recreation, or medication. (Correspondence ["Surreply"] at 4, ECF No. 30). He alleges that he has been transferred numerous times in an attempt to cover up the conspiracy and prison corruption. (Correspondence at 2, ECF No. 37). Melvin refuses to enter general population for fear that he may be harmed as a result of the alleged conspiracy. (See Correspondence, ECF Nos. 38, 39). Therefore, prison staff have placed him in disciplinary segregation. (See id.).

---

[3] Citations in both documents refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

On April 29, 2019, Melvin filed the Complaint alleging that Defendants were plotting to have him killed.[4] (ECF No. 1). As relief, Melvin seeks an investigation into the matter and asks Defendants to take a polygraph test. (Second Supplement at 3, ECF No. 4). On August 12, 2019, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, asserting failure to state a claim and failure to exhaust administrative remedies. (ECF No. 23). On August 23, 2019, Melvin filed a correspondence, which the Court construes as an Opposition to Defendants' Motion. (ECF No. 26). Defendants filed a Reply on August 27, 2019. (ECF No. 29). Melvin filed a Surreply on August 28, 2019. (ECF No. 30).

## II. DISCUSSION

### A. Failure to Exhaust Administrative Remedies

Defendants assert that Melvin failed to exhaust his administrative remedies pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. "The issue of exhaustion of administrative remedies under the PLRA 'is analogous to subject matter jurisdiction, personal jurisdiction, venue, and abstention, in that all these matters are typically decided at the outset of the litigation' and should be decided 'as early as feasible.'" Germain v. Shearin, No. CV TDC-16-2685, 2019 WL 4542723, at *4 (D.Md. Sept. 19, 2019) (quoting Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014)). The Court

---

[4] Although Melvin claims that there are over sixty individuals involved in the alleged conspiracy to harm him, he has only named Abello and Matti as Defendants, despite being granted the opportunity to supplement his Complaint. Therefore, the Court shall address only the claims against the named Defendants. To the extent Melvin intends to file suit against other individuals, he may do so in a separate action.

5

may determine if the plaintiff exhausted his administrative remedies either on summary judgement on or "an unenumerated Rule 12(b) motion" with "resolution by the judge of disputed facts."[5] Id. Disputed facts should be decided by the judge "'in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue.'" Id. (quoting Albino, 747 F.3d at 1170).

An inmate is required to exhaust administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 88–89 (2006). Exhaustion means "'using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford, 548 U.S. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002).

Inmates housed in a Maryland correctional facility exhaust administrative remedies through a three-step[6] process: "the inmate files a request for remedy with the warden, then appeals a denial to the Commissioner of Corrections, and finally appeals any subsequent denial to the Inmate Grievance Office." Glover v. E. Corr. Inst., No. CV TDC-15-0598, 2016 WL 676361, at *3 (D.Md. Feb. 17, 2016). This exhaustion requirement "applies to

---

[5] As discussed below, the Court construes Defendants' Motion as a 12(b)(6) motion. Accordingly, Defendants jurisdictional claim will be resolved under that standard.

[6] Defendants aver that the Department of Pretrial Detention and Services ("DPDS") has a four-step administrative grievance process. (Tippy Aff. ¶ 3). The first or "additional" step in the DPDS process merely refers to the completion of a grievance form within fifteen days of the incident. (Id. ¶ 4).

6

all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Spires v. Harbaugh, 438 F.App'x 185, 186 (4th Cir. 2011) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)).

Here, it is undisputed that that Melvin is an inmate at a Maryland correctional institution and was required to exhaust available administrative remedies prior to initiating this litigation. Melvin asserts that he satisfied that prerequisite and attaches several exhibits showing that he filed ARPs regarding his conspiracy claim against Defendants. (See ARP Documents at 11–13, 25–33, 40–41, 49–51). Melvin also submits letters from the Inmate Grievance Office ("IGO") dismissing his claims regarding the "conspiracy to kill [him] involving more than 60 people in four institutions." (Id. at 5–6). In their Reply, Defendants allege that although Melvin filed an ARP regarding a "guard at MCTC," that ARP is irrelevant because it fails to identify Defendants. (Reply at 4, ECF No. 29). In doing so, Defendants ignore the other ARPs that Melvin attached, which show that he specifically named Defendants as the individuals who were conspiring to have him killed. (See ARP Documents at 12, ECF No. 32).

Defendants also argue that Melvin did not submit any ARPs when he was housed at BCBIC from December 2017 to May 2018. (See Mot. Dismiss Summ. J. ["Mot. Dismiss"] at 5, ECF No. 23). Defendants contend that Melvin "is now time barred" and that "an untimely inmate grievance filing challenging the dismissal of his grievance is no better than a complete failure to exhaust administrative remedies and should result in dismissal of his complaint." (Id. at 6). The Court is not persuaded by this argument.

7

Melvin does not contest that he did not file ARPs regarding the alleged conspiracy during this time period. Rather, he explains that he did not have paper while housed at BCBIC but that he submitted an ARP as soon as his was transferred to a different facility. Melvin submitted an ARP dated October 7, 2018 in which he specifically named Defendants as participating in the conspiracy. If this claim were time-barred, Defendants have not provided this Court with evidence establishing that Melvin's ARP was rejected on that procedural ground.

To the contrary, Melvin attached a letter from IGO, dated April 17, 2019, stating that Melvin complained "that there is a conspiracy to kill [him] involving more than 60 people in four institutions," which he may have somehow linked to an allegation that he was "improperly denied recreation." (ARP Documents at 5). IGO concluded that Melvin "failed to state a claim upon which administrative relief can and should be granted." (Id.). This is a decision on the merits of Melvin's claim. If Melvin's claim were technically time-barred but IGO nonetheless reached the merits of that claim, this Court cannot conclude that Melvin's claim was time-barred and disregard IGO's determination that Melvin failed to state a claim. See Woodford, 548 U.S. at 89 (concluding that exhaustion of administrative remedies serves two purposes, including discouraging "disregard of [the agency's] procedures"). The Court thus concludes that based on the record submitted, Melvin has exhausted his administrative remedies. The Court will now address the merits of Melvin's claims.

**B. Rule 12(b)(6) Motion to Dismiss**

**1. Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005)

(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

When, as here, the plaintiff is proceeding pro se, the Court will liberally construe the pleadings, which are held to a less stringent standard than pleadings drafted by lawyers. Erickson, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted).

### 2. Analysis

#### a. Civil Conspiracy

Construed liberally, Melvin's Complaint alleges that Defendants have conspired to harm him at every correctional facility where he has been housed. To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. See Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). An essential element for a claim of conspiracy to deprive plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators. See

Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1006–07 (4th Cir. 1987). Without an agreement, the independent acts of two or more wrongdoers do not amount to a conspiracy. See Murdaugh Volkswagen v. First Nat'l Bank, 639 F.2d 1073, 1075–76 (4th Cir. 1981). Plaintiff must thus allege facts establishing that defendants shared a "unity of purpose or a common design" to injure him. Am. Tobacco Co. v. United States, 328 U.S. 781, 809–10 (1946). "A conspiracy may . . . be 'inferred from the things actually done.'" Murdaugh, 639 F.2d at 1075 (quoting Overseas Motors, Inc. v. Imported Motors Ltd., Inc., 375 F.Supp. 499, 532 (E.D.Mich. 1974)). However, circumstantial evidence consisting of "coincidence piled on coincidence" are insufficient where the "proof of collusion is simply too attenuated" to conclude there was a conspiracy to violate the law. Murdaugh, 639 F.2d at 1075.

Here, Melvin alleges that following an altercation with another inmate at BCBIC, Matti told him "we going to kill you."[7] (Pl.'s Opp'n at 1). Melvin then staged a suicide attempt, causing him to be placed in the mental health unit, where Abello allegedly came to threaten him four times. (List of Threats and Witnesses at 2). According to Melvin, Abello directed correctional staff at different prisons to tell other inmates that Melvin is a snitch, in furtherance of the conspiracy to have him killed. However, these allegations do

---

[7] To the extent Melvin alleges a constitutional violation based on Defendants' verbal threats, his claim also fails. Verbal abuse of inmates by guards, without more, states no claim of assault. Henslee v. Lewis, 153 F.App'x 178, 180 (4th Cir. 2005); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979).

not establish that Defendants acted jointly in concert or that they had an agreement to hurt him.

Melvin's allegation that his brief confrontations with Defendants at BCBIC led to a plot of a broad geographical and temporal scope that continues to endanger his life, health, and safety is not supported by the evidence in the record. Melvin's Complaint, Supplements, and letters to the Court provide no facts supporting the persistence of this scheme or details demonstrating that Defendants acted in furtherance of that scheme. At bottom, Melvin fails to state a claim upon which relief can be granted, warranting dismissal of Melvin's civil conspiracy claim.

### b. Mental or Emotional Injury

Defendants also contend that Melvin's claim for emotional injury is barred by the PLRA. The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). It is settled law that a prior physical injury is required for a prisoner to recover damages for emotional and mental injury. See Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (applying § 1997e(e) to bar psychological damages absent allegation of more than de minimis injury).

In this case, at no point does Melvin allege that he suffered a physical injury. Thus, "[t]he absence of an injury alone is enough to defeat Plaintiff's claims." Kitchen v. Ickes, 116 F.Supp.3d 613, 622 (D.Md. 2015), aff'd, 644 F.App'x 243 (4th Cir. 2016). Again, Melvin has failed to state a claim upon which relief can be granted.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 23). A separate Order follows. Entered this 30th day of March, 2020.

/s/
George L. Russell, III
United States District Judge